# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 8, 2004 Session at Franklin[1]

# JENNIFER L. BISCAN, ET AL. v. FRANKLIN H. BROWN, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 98C-2721      Carol Soloman, Judge**

—————————

**No. M2001-02766-SC-R11-CV - Filed March 30, 2005**

—————————

We granted this appeal to determine whether an adult who hosts a party for minors and knows in advance that alcohol will be consumed has or may voluntarily assume a duty of care towards the minor guests. We hold that the defendant adult host had such a duty of care even though he did not furnish any alcohol. We also hold that the trial court did not err in excluding evidence regarding the minor plaintiff's prior alcohol-related offenses and her prior experience with alcohol and that the trial court did not err in determining that the plaintiff's sister was not at fault as a matter of law pursuant to Tennessee's statutory shield for furnishers of alcoholic beverages. The Court of Appeals affirmed the trial court in all respects. We affirm the result reached by the Court of Appeals on the separate grounds set forth herein.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed.**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which JANICE M. HOLDER and WILLIAM M. BARKER, JJ., and ALLEN W. WALLACE, SP.J., joined. FRANK F. DROWOTA, III, C.J., filed a concurring and dissenting opinion.

Alan M. Sowell, Nashville, Tennessee, for the Appellant, Franklin H. Brown.

John R. Hollins, Jr., Nashville, Tennessee, for the Appellant, Paul N. Worley.

Philip N. Elbert and W. David Bridgers, Nashville, Tennessee, for the Appellees, Jennifer Biscan and Robert Biscan.

Winston S. Evans, Nashville, Tennessee, for the Amicus Curiae, Mothers Against Drunk Driving.

---

[1] Oral argument was heard in this case on October 8, 2004, in Franklin, Williamson County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

# OPINION

## Background

The plaintiff, Jennifer Biscan ("Jennifer"),[2] age 16, was severely injured in a single-car automobile accident after leaving a party hosted by the defendant, Paul Worley ("Worley"), at his home in Williamson County, Tennessee. The defendant, Franklin Hughes Brown ("Brown"), age 16, drove the car in which Jennifer was riding. After the accident, Brown's blood-alcohol content was measured at .17%; Jennifer's was .032%.

Jennifer and her father, Robert Biscan, filed negligence actions against the driver Brown and the adult host Worley. The plaintiffs alleged that Brown's operation of the automobile while under the influence of alcohol was negligent and negligent per se. The plaintiffs alleged that Worley negligently "permitted, condoned and encouraged the unlawful consumption of alcohol by minors," that he undertook a special duty to protect the minors at the party, and that Worley "negligently exercised control or negligently failed to exercise control" over Brown. The plaintiffs also alleged that Worley was negligent per se. Both the defendants Brown and Worley raised as affirmative defenses the comparative fault of Jennifer Biscan and the negligence and negligence per se of Jennifer's twin sister, Dana Biscan ("Dana"), who provided alcohol to Brown. Defendant Worley also averred that Brown's negligence was an independent intervening act relieving him of liability; Brown averred that Worley was comparatively negligent.

The evidence presented at trial is summarized as follows. On October 18, 1997, Brown and Jennifer attended a party hosted by defendant Worley for his daughter Ashley's eighteenth birthday. Brown and Jennifer attended school with Ashley. Ashley personally invited her friends and members of her school class to the party. Other students at Ashley's school, including Jennifer and her sister Dana, learned of the party and went to it even though they were not personally invited to the party by Ashley or by her father, Worley. All the minors who came to the party were permitted to stay.

Worley gave the party at his home and was the only adult present. Although he did not serve alcohol at the party, Worley fully expected many of the minor guests to bring and consume alcohol, which is precisely what happened. Worley instructed his daughter beforehand that his "rule" would be that anyone who was drinking would be required to spend the night. The record reflects that some of the guests were aware of the rule, but that many were not. Although Worley walked around and patrolled the party and was aware that some of the guests had brought beer, he made no attempt to enforce the rule that guests who had consumed alcohol stay overnight.

---

[2] Because Jennifer Biscan's sister, Dana Biscan, figures heavily in this appeal, for the sake of clarity we refer to each of them by her first name.

Brown, a longtime friend of Jennifer's, consumed beer before and during the party. Brown obtained some of the beer from Dana, who had purchased it illegally. Brown and some of the other guests reimbursed Dana for the cost of the beer.

Later, between 11:00 and 11:30 p.m., Brown and Jennifer left the party together in Brown's car. The accident occurred when Brown failed to see a stop sign and slammed into a guardrail.

The record reflects that Jennifer sustained extremely serious injuries. She remained in a coma for nearly three weeks and required hospitalization for nearly two months after the accident. Much of the brain damage she sustained in the accident is permanent. Jennifer has continuing difficulty with memory, decision-making, and numerous other cognitive functions, as well as limitations in the use of her left arm.

At trial, the jury found that Brown was 70% at fault, Worley was 15% at fault, and Jennifer was 15% comparatively negligent. The jury then set Jennifer's damages at $3,954,810. Brown and Worley appealed to the Court of Appeals, which affirmed the trial court in all respects. Brown and Worley then sought permission to appeal to this Court.

We granted review to address three issues. First, defendants Brown and Worley argue that the trial court erred in excluding evidence of Jennifer's prior experiences with alcohol and evidence of alcohol-related juvenile court citations while admitting evidence of Jennifer's knowledge of the effects of alcohol. Second, both defendants argue that the trial court erred in granting a directed verdict to the plaintiffs as to Dana's liability and instructing the jury that it could not allocate fault to Dana because she was immune from fault under Tennessee Code Annotated section 57-10-101 (2002), which insulates those who "furnish" alcoholic beverages from liability for injuries caused by persons who consume the beverages. Third, defendant Worley contends that he neither owed nor assumed a duty of care to Jennifer and that the trial court erred in denying his motion for summary judgment on that ground.

We will address each issue in turn.

**Analysis**

*I. Evidentiary Rulings*

The trial court admitted evidence of Jennifer's knowledge of the effects of alcohol but excluded testimony of her prior experiences with alcohol, as well as evidence of alcohol-related juvenile court citations. Brown and Worley argue that the excluded evidence was relevant to show that Jennifer was comparatively negligent in accepting a ride with Brown. Jennifer argues that evidence regarding her prior experience with alcohol is irrelevant and that Tennessee law bars introduction of her juvenile court citations.

*Standard of Review*

We review the trial court's decision to admit or exclude evidence by an abuse of discretion standard. Mercer v. Vanderbilt Univ., Inc., 134 S.W.3d 121, 131 (Tenn. 2004). "A trial court abuses its discretion 'only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" Id. (quoting Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn.2001)).

Evidence is relevant and therefore admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence that is relevant under Rule 401 may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403.

### A. *Evidence of Jennifer Biscan's Prior Alcohol Experiences*

The defendants argue that Jennifer was negligent in choosing to ride with an intoxicated driver and that any evidence relating to Jennifer's knowledge of the effects of alcohol was relevant. The defense proffered the testimony of Jennifer's classmates and friends that she had consumed alcohol and become intoxicated in the past. Brown also proffered testimony that Jennifer had ridden with him three to five times in the past when he had been intoxicated.

Although the trial court excluded that evidence, it permitted the defense to introduce the blood-alcohol tests performed on Jennifer at the hospital after the accident. Those tests showed a blood-alcohol content of .032%. The trial court also admitted evidence that Jennifer had been told by her father and in school that drinking and driving was harmful, and admitted testimony that Jennifer had gone out with groups of classmates who consumed alcohol.

We agree with the defendants' argument that evidence regarding Jennifer's prior experiences with alcohol was relevant. One of the factors to consider in determining the fault of a minor is the minor's experience. Eaton v. McLain, 891 S.W.2d 587, 592 (Tenn. 1994). Because a minor may not lawfully purchase or consume alcohol, whether a minor has the capacity, knowledge and experience to appreciate the effects of alcohol is put in issue merely by the fact of his or her being underage. See Brookins v. The Round Table, Inc., 624 S.W.2d 547, 550 (Tenn. 1981) (superseded on other grounds by Tennessee Code Annotated sections 57-10-101 and -102).

Accordingly, we disagree with the Court of Appeals' conclusion that Jennifer's prior experience with alcohol was not relevant simply because the defendants did not argue that Jennifer was intoxicated or that her consumption of alcohol at this party had any bearing on her decision to ride with Brown. In our view, Jennifer's firsthand experience with alcohol was probative of her ability to evaluate the risk in choosing to ride with Brown on the night of the accident. Indeed, it is one thing to be told that alcohol can impair one's ability to drive; it is quite another to have experienced that impairment firsthand.

-4-

Although the evidence was relevant, we further conclude that the trial court did not err in excluding the evidence. A trial court's decision to exclude evidence, "even that evidence which is considered relevant, [is] generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." State v. Saylor, 117 S.W.3d 239, 247 (Tenn. 2003) (citing Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 442 (Tenn.1992)). Had the trial court admitted evidence of Jennifer's prior consumption of alcohol, there was a danger that the jury would confuse that conduct and any earlier negligence with the issue of negligence on the night of this accident: Jennifer's decision to ride with Brown. See Tenn. R. Evid. 403.

Moreover, given that the trial court admitted some evidence establishing that Jennifer knew drinking and driving was dangerous, as well as evidence of her blood alcohol content on the night of the accident, the trial court was well within its discretion in excluding evidence of Jennifer's personal experience with alcohol. As the Court of Appeals observed, "[b]ecause the jury found Jennifer negligent and allocated fault to her, it obviously found the [admitted] evidence sufficient to determine that Jennifer knew or should have known that Hughes Brown was intoxicated when she got in the car with him."

Accordingly, we conclude that the trial court did not abuse its discretion.

### B. Evidence of Jennifer's Juvenile Court Citations

The defendants Worley and Brown also appeal the trial court's decision to exclude evidence of Jennifer's three juvenile court citations, including one citation finding that she had possessed and consumed alcohol and suspending her driver's license for one year. The other two citations were preserved in a jury-out proffer. Worley contends that the facts underlying the three juvenile court criminal citations are "arguably the most important evidence of Jennifer Biscan's history of alcohol possession and consumption."

As the Court of Appeals recognized, however, juvenile adjudications are generally inadmissible outside of juvenile court. Tennessee Code Annotated section 37-1-133(b) (2001) provides:

> The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against such child in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a pre-sentence investigation and report.

Although this rule has been interpreted to permit admission of juvenile adjudications for purposes of criminal sentencing, see State v. Stockton, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986), its plain terms clearly bar the introduction of Jennifer's juvenile record in this civil case. See, e.g., Planned Parenthood of Middle Tenn. v. Sundquist, 38 S.W.3d 1, 24 (Tenn. 2000) ("[W]hen the

words of a statute are plain, clear, and unambiguous, we merely look to the statute's plain language to interpret its meaning."). We therefore affirm the trial court's decision to exclude the evidence of Jennifer's juvenile adjudications.

## II. Apportionment of Fault to Dana Biscan

We next address the defendants' argument that the trial court erred in directing a verdict for the plaintiffs as to the fault of Dana Biscan. Prior to trial, the plaintiffs filed for partial summary judgment seeking to preclude apportionment of fault to Dana for illegally purchasing and providing the beer to minors, arguing that pursuant to Tennessee Code Annotated sections 57-10-101 and -102, one who merely furnishes alcohol to another cannot be at fault. The trial court denied the plaintiffs' motion, but at the close of proof, the trial court reconsidered the issue and granted a directed verdict. The jury was instructed that it could not apportion fault to Dana Biscan.

On appeal, the defendants argue that the statute applies only in commercial settings and thus cannot shield Dana Biscan, an individual, for illegally providing alcohol to minor Hughes Brown. They argue that Dana was negligent in providing alcohol to Brown and that she was negligent per se in providing alcohol to a minor. The plaintiffs argue that the defendants have waived appellate review of this issue. In the alternative, they argue that the statute shields Dana as a person who "furnished" alcohol to another.

## Standard of Review

This Court reviews the trial court's decision to grant a directed verdict de novo, applying the same standards as the trial court. Gaston v. Tenn. Farmers Mut. Ins. Co., 120 S.W.3d 815, 819 (Tenn. 2003). We will affirm a directed verdict "only when the evidence in the case is susceptible to but one conclusion." Childress v. Currie, 74 S.W.3d 324, 328 (Tenn. 2002) (citing Eaton, 891 S.W.2d at 590). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion," and must accept all reasonable inferences in favor of the nonmoving party. Id. We may affirm the motion "only if, after assessing the evidence according to the foregoing standards, [we] determine[] that reasonable minds could not differ as to the conclusions to be drawn from the evidence." Id.; see also Cecil v. Hardin, 575 S.W.2d 268, 270 (Tenn. 1978).

## A. Waiver

We first address the plaintiffs' argument that the defendants failed to preserve this issue for review because they did not object to the trial court's grant of a directed verdict. At trial during a colloquy on jury instructions, the trial court informed counsel that it intended to submit two different verdict forms to the jury, one including Dana Biscan and one excluding her. The court had not yet decided whether to grant the directed verdict as to Dana, and because the court had allowed testimony as to Dana's fault, the court wanted to have a jury verdict that would comport with its final decision on Dana's fault. During the discussion, the defendant Brown's attorney stated, "I think she's [Dana] to blame but not legally, and I have to agree with the law. . . . I would rather you direct

the verdict rather than this confusing maybe she's at fault, maybe she isn't, in all honesty." The defendant Worley's attorney said nothing, and the trial judge entered the directed verdict.

The record as a whole, however, reveals that the defendants raised the issue well before the directed verdict. During the pretrial motions hearing, for instance, the trial court heard argument from counsel for Brown, Worley, and the plaintiffs on the issue of Dana's fault under Tennessee Code Annotated sections 57-10-101 and -102. Counsel for both Brown and Worley argued that fault should be apportioned to Dana. The court declined to grant summary judgment to the plaintiffs, indicating that it would take the issue under advisement and allow proof to be presented relating to Dana's fault. Both attorneys presented evidence to prove Dana's fault. Thus, by the time the court granted the directed verdict, the issue had been preserved. Additionally, both Brown and Worley challenged the grant of the directed verdict in their motions for new trial.

In general, the policy of the Tennessee Rules of Appellate Procedure is to "'disregard technicality in form in order that a just, speedy, and inexpensive determination of every appellate proceeding on its merits may be obtained.'" Bradshaw v. Daniel, 854 S.W.2d 865, 868 (Tenn. 1993) (quoting Tenn. R. App. P. 1 Advisory Commission Comments). Because the defendants' attorneys argued Dana's fault in opposition to summary judgment, argued it throughout the trial, and included it in their motions for new trial, they have sufficiently preserved the issue for review.

The plaintiffs also claim that Worley may not raise Dana's fault on appeal because it was not timely pled. Worley first pled Dana's fault as an affirmative defense in his amended answer, filed three months after the trial concluded. When the trial began on June 18, 2001, plaintiffs had before the court two pending motions for leave to amend. The trial court granted both motions on June 19, 2001, the day after the trial began, ordering that plaintiffs' first amended and second amended complaints be filed. Pursuant to Tennessee Rule of Civil Procedure 12.01, Worley then had thirty days to file an answer to the second amended complaint. Worley prepared an answer, but due to a clerical error, Worley did not file the answer until October 11, 2001. Worley accompanied his filing with a letter to all attorneys of record explaining the error, and the trial court denied the plaintiffs' motions to strike portions of the amended answer.

Worley's failure to plead Dana's fault until after the conclusion of trial is not fatal to his appeal of this issue. Tennessee Rule of Civil Procedure 15.02 provides that pleadings may be amended to conform to the evidence "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties." Such amendment may be allowed by the court "even after judgment." Id.; see also George v. Bldg. Materials Corp. of Am., 44 S.W.3d 481, 486 (Tenn. 2001) ("'Amended pleadings may be filed before trial, after trial, or even after appeal so long as the trial court has jurisdiction and so long as the trial court does not abuse its discretion in allowing the amendment.'" (quoting Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 904 (Tenn. 1987))). The rules relating to amendment of pleadings are liberal, vesting broad discretion in the trial court. Worley has not waived appeal of this issue by failing to plead it prior to the conclusion of trial.

### B. Liability of Dana Biscan for Furnishing Alcohol

Moving to the merits of this issue, we next consider whether Tennessee Code Annotated sections 57-10-101 and -102 apply to Dana Biscan.

In interpreting a statute, we begin with the words of the statute itself, applying their "ordinary and plain meaning." Blankenship v. Estate of Bain, 5 S.W.3d 647, 651 (Tenn. 1999). The first section of the statute provides:

> The general assembly hereby finds and declares that the consumption of any alcoholic beverage or beer rather than the furnishing of any alcoholic beverage or beer is the proximate cause of injuries inflicted upon another by an intoxicated person.

Tenn. Code Ann. § 57-10-101 (2002) ("section 101"). The effect of section 101 is to make it impossible for one who has been injured by an intoxicated person to state a claim for negligence against the person or entity who furnished the alcoholic beverage or beer because the statute removes, as a matter of law, the required element of legal causation. See, e.g, Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn.1997) (a claim for negligence requires a duty of care owed by the defendant to the plaintiff; a breach of that duty; an injury or loss; causation in fact; and legal, or proximate, causation). In other words, there can be no cause of action resting on the allegation that one person "furnished" alcohol to another because it is impossible to prove proximate cause. The statute does not merely provide immunity from suit where one has furnished alcohol to another; rather, the statute constitutes the legislative determination that persons who furnish alcohol are not at fault for injuries inflicted by an intoxicated person.

The second part of the statute carves out an exception to the first part. It provides that a seller of alcohol may be liable to a third party for injuries if the seller sold alcohol to a minor or if the seller sold alcohol to an obviously intoxicated person and the sale was a proximate cause[3] of the injuries suffered by the third party:

> Notwithstanding the provisions of § 57-10-101, no judge or jury may pronounce a judgment awarding damages to or on behalf of any party who has suffered personal injury or death against any person who has sold any alcoholic beverage or beer, unless such jury of twelve (12) persons has first ascertained beyond a reasonable doubt that the sale by such person of the alcoholic beverage or beer was the proximate cause of the personal injury or death sustained and that such person:

___

[3] We note that although section 57-10-101 uses the term "the proximate cause," our decisions recognize that there may be more than one party who is "a proximate cause" of the injuries or damages to a plaintiff. See McIntyre v. Balentine, 833 S.W.2d 52, 59 (Tenn. 1992) (emphases added).

(1)  Sold the alcoholic beverage or beer to a person known to be under the age of twenty-one (21) years and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold; or

(2)  Sold the alcoholic beverage or beer to an obviously intoxicated person and such person caused the personal injury or death as a direct result of the consumption of the alcoholic beverage or beer so sold.

Tenn. Code Ann. § 57-10-102 (2002) ("section 102").

We agree with the trial court and with the Court of Appeals that the plain language of section 101 precludes allocation of fault to Dana Biscan.  Section 101 clearly states that the furnishing of alcohol or beer is not a proximate cause of injuries inflicted by an intoxicated person.  Moreover, the only exceptions to section 101 are for sales of alcohol under the circumstances set forth in section 102.

As we explained when we first had occasion to interpret this statute, "'[w]hen the words of a statute are plain and unambiguous, the assumption is that the legislature intended what it wrote and meant what it said.  The pertinent language must be applied without any forced or subtle construction extending its import.'"  Worley v. Weigels, Inc., 919 S.W.2d 589, 593 (Tenn. 1996) (quoting McClain v. Henry I. Siegel Co., 834 S.W.2d 295, 296 (Tenn. 1992) (alterations omitted)).  The clear language of the statute admits of only one conclusion:  that the legislature intended to shield persons such as Dana who "furnish" alcohol in a social setting.

Although the defendants argue strenuously that the statute is intended to apply only to traditional "dram shop" defendants, i.e., commercial sellers, their argument turns the statute on its head.  Section 101, which comes first, sets forth the general rule; section 102, which comes second, creates two narrow exceptions applicable only to sellers.  The specific exceptions to the general rule, however, must be confined to their terms and cannot be read to somehow limit the broad rule stated in section 101.  "Where a general rule has been established by statute, with exceptions, the court will not curtail the former nor add to the latter by implication."  Burns v. City of Nashville, 178 S.W. 1053, 1054 (Tenn. 1915).  Section 101 applies without limitation to the "furnishing" of alcoholic beverages or beer.  Had the legislature intended section 101 to apply only to the sale of alcoholic beverages or beer, it would most certainly have chosen the word "sale" over the word "furnish," as it did in section 102.

Moreover, as the Court of Appeals discussed, the legislative history of sections 101 and 102 reveals that the statute was intended to codify the common-law rule that an individual who furnishes alcohol to another is not liable for any damages resulting from the other's intoxication, even if those damages are foreseeable.  See, e.g., Cecil, 575 S.W.2d at 271.  Thus, although the legislative history reflects much debate and concern over the extent to which sellers of alcoholic beverages and beers

should be covered, the starting point was that the mere furnishing of alcohol, whether gratuitously or for commercial gain, is not a basis for liability. See Worley v. Weigels, 919 S.W.2d at 593-94.

Defendant Brown argues that Dana Biscan should not be protected by section 101 because she was not a social host and because she collected money from the other minors to cover the cost of the beer. There is nothing in section 101, however, limiting its scope to one who hosts a social function. In Cecil, for example, a passenger furnished alcohol to a driver. The driver became intoxicated and struck and killed a bicyclist. We held that the passenger was not liable under the common-law rule. 575 S.W.2d at 271. There, as here, the defendant did not "host" anything.

Similarly, the mere fact that the other minors reimbursed Dana for the beer she purchased for them is not sufficient to make her a seller to whom section 102 of the statute applies. She did not "sell" the beer to the other minors; she merely performed an errand (albeit an illegal errand) on their behalf. See, e.g., Childress v. Sams, 736 S.W.2d 48 (Mo. 1987) (holding one does not lose one's position as a social host if merely repaid for an alcohol purchase rather than having a commercial motive); accord Elizondo v. Ramirez, 753 N.E.2d 1123, 1130 (Ill. App. Ct. 2001), and Koehnen v. Dufuor, 590 N.W.2d 107, 112-13 (Minn. 1999). Moreover, there is simply no statutory language that indicates section 102 applies under such circumstances.

In sum, we hold that Dana's conduct in furnishing beer to the defendant Brown did not proximately cause Jennifer Biscan's injuries under the explicit terms of section 101. Dana did not sell alcohol to Brown within the meaning of section 102, so the exceptions contained in that part do not apply. Because the statute mandates the conclusion that Dana was not a proximate cause of Jennifer's injuries, the trial court was correct in directing a verdict. Since Dana cannot, as a matter of law, be at fault for Jennifer's injuries, it would have been error to allow the jury to apportion fault to her.

We note that this result would be different if Dana were protected by a statute making her immune from suit. Under our system of comparative fault, a jury may apportion fault to an immune party notwithstanding the party's immunity from liability. Carroll v. Whitney, 29 S.W.3d 14, 19 (Tenn. 2000). We have also held that a jury may apportion fault to persons who are "effectively immune," such as those protected by a statute of repose. Dotson v. Blake, 29 S.W.3d 26, 29 (Tenn. 2000). However, in enacting Tennessee Code Annotated section 101, the legislature did not make persons or entities who furnish alcohol immune from suit; rather, the legislature determined that furnishing alcohol is not a proximate cause of injuries inflicted by an intoxicated person. Thus, the effect of the provision is not merely to restrict the remedy for a cause of action, but to remove that cause of action entirely, making a person or entity who furnishes alcohol immune from fault as well as immune from liability. Although we held in Carroll that the attribution of fault was not limited "to persons against whom the plaintiff has a cause of action in tort," 29 S.W.3d at 18, that holding referred to a plaintiff's ability to prosecute a suit, not to the very existence of a cause of action based on the underlying conduct.

-10-

The Dissent argues that our decision undermines the goal of our comparative fault system: achieving fairness by linking liability with fault. On the contrary, our decision is entirely consistent with that goal. In enacting section 57-10-101, the General Assembly made the public policy determination that persons within the purview of the statute are not at fault for injuries resulting from another's intoxication. It would be plainly inconsistent with the principles of comparative fault to apportion fault to one who is, by law, without fault.

Moreover, we should defer to the legislature's policy decision to eliminate the fault of persons covered by section 57-10-101 irrespective of that decision's effect on our comparative fault scheme. Although it is the province of this Court to prescribe rules for practice and procedure in the state's courts, where a decision of the legislature chiefly driven by public policy concerns infringes on that power we will generally defer to the judgment of the legislature. See, e.g., Martin v. Lear Corp., 90 S.W.3d 626, 631-32 (Tenn. 2002); see also, e.g., Tenn. Code Ann. § 55-9-604 (2004) (excluding from most civil actions evidence of a party's failure to wear a seatbelt).

Additionally, we believe the Dissent reads Dotson more broadly than the language of that opinion permits. The Dissent argues that Dotson rejected the notion that fault may be apportioned only to a nonparty tortfeasor who is protected by an immunity statute (as opposed to some other type of statutory shield). Although it held that fault may be apportioned to those who are immune or "effectively immune" from liability, Dotson was silent on the issue of whether liability may be apportioned to one who is statutorily without fault. Moreover, the Dissent argues that because the end result is the same whether Dana is protected by an immunity statute or by a statute removing fault, we should simply follow Carroll and Dotson and permit fault to be attributed to her. This argument puts the cart before the horse and ignores the central question at issue, namely, whether or not the jury should be permitted, at the intermediate step of apportioning fault prior to the assessment of liability, to assign fault to one who is statutorily without fault. As we have explained, the answer to that question is no.

Finally, the Dissent argues that this case will muddy the area of comparative fault by requiring courts and juries to make difficult distinctions between parties who are immune from suit and parties who are statutorily without fault. However, our decision in no way creates an unworkable rule, because it applies only to statutes that eliminate fault, rather than to statutes that merely eliminate liability. Compare, e.g., Tenn. Code Ann. § 50-6-103(a) (1999) ("Every employer and employee subject to the Workers' Compensation Law shall, respectively, pay and accept compensation . . . without regard to fault . . . .") with Tenn. Code Ann. § 9-8-307(h) (1999) ("State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment . . . .") (emphases added). Additionally, our decision is consistent with our decisions in Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), and Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252 (Tenn. 1997), that employers who are statutorily without fault under the workers' compensation laws cannot be included in apportioning fault. As the Dissent points out, in the workers' compensation arena, as here, the legislature has "already determined that for policy reasons an employer may not be the proximate, or legal, cause of an employee's work-related injuries." See also Curtis v. G.E. Capital Modular

Space, 155 S.W.3d 877, 884 (Tenn. 2005) ("Simply put, the issue of fault never enters the picture in a workers' compensation case."). Similarly, because the issue of fault "never enters the picture" when one furnishes alcohol to another within the purview of section 57-10-101, that section precludes the allocation of fault to Dana Biscan.

### C. Dana's Negligence Per Se

Finally, the defendants argue that the trial court erred in directing a verdict as to Dana's fault because Dana was negligent per se in providing alcohol to Brown, a minor, in violation of Tennessee Code Annotated sections 39-15-404(a)(2) (2003) and 57-3-412(a)(4) (2002). These statutes make it illegal to furnish alcohol to a minor under any circumstances. We agree with the plaintiffs and with the Court of Appeals that because the allegation of negligence per se is founded on the conduct of furnishing alcohol to defendant Brown, Dana cannot be negligent per se as a matter of law pursuant to Tennessee Code Annotated section 57-10-101.

Although violation of a statute constitutes negligence per se, the violation is evidence only of conduct falling below the reasonable standard of care. Cook v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 937 (Tenn. 1994); see also McIntyre v. Balentine, 833 S.W.2d 52, 59 (Tenn. 1992). Violation of a statute does not establish the element of proximate cause. Thus, "a jury may not base its verdict on th[e] per se negligence unless it affirmatively appears that the statutory violation was a proximate cause of the injury for which recovery is sought." McIntyre, 833 S.W.2d at 59 (citing Brookins, 624 S.W.2d at 550, and Barr v. Charley, 387 S.W.2d 614, 617 (1964)). Because the defendants assert that Dana's negligence per se is based on the conduct of furnishing alcohol, and because that conduct has been legislatively determined not to be a proximate cause of Jennifer's injuries, Dana cannot be liable on a theory of negligence per se. As we explained in Worley v. Weigels,

> [w]ith the enactment of [Tennessee Code Annotated §§ 57-10-101 and -102], the legislature made a definite distinction between the basis for civil liability and the basis for criminal liability incident to the sale of alcoholic beverages. These statutes, rather than the duties imposed by criminal statutes, determine the civil liability of the [defendant].

919 S.W.2d at 593 (emphasis added). "The legislature . . . is presumed to know of its enactments and the state of the law." Robinson v. LeCorps, 83 S.W.3d 718, 723 (Tenn. 2002). Although Dana may be criminally liable for furnishing alcohol to Brown, civil liability is precluded by section 101.

In sum, although we hold that the defendants have not waived appeal of the trial court's grant of a directed verdict as to Dana Biscan's fault, we affirm the trial court's decision. The plain language of the statute provides that one who furnishes alcohol, as Dana did here, does not proximately cause the injuries inflicted by an intoxicated person. Under the express terms of the statute, Dana Biscan cannot be found to be at fault for Jennifer Biscan's injuries. Similarly, she

cannot be found at fault under a theory of negligence per se, because the required element of causation has been legislatively removed. The decision of the trial court is affirmed.

### III. Worley's Motion for Summary Judgment

Finally, we address Worley's argument that the Court of Appeals erred in affirming the trial court's denial of his motion for summary judgment. Worley argues that he owed no legally-recognized duty to Jennifer Biscan because he did not serve, provide, encourage, or assist in the underage consumption of alcohol. He argues that it would be an injustice to hold him liable for Jennifer's injuries resulting from Brown's consumption of alcohol at the party because, had he actually furnished the alcohol to Brown, Tennessee Code Annotated section 57-10-101 would shield him from fault. He also argues that even if he did assume a duty of care, he abandoned that duty.

The plaintiffs advance three theories for imposition of a duty. First, they argue that Worley owed a common-law duty of care to Jennifer Biscan. Second, they argue that even if Worley did not owe this duty under the common law, he voluntarily assumed it. Finally, the plaintiffs argue that Worley was negligent per se. We will consider each argument in turn.

### Standard of Review

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; Stovall v. Clarke, 113 S.W.3d 715, 721 (Tenn. 2003). In reviewing a motion for summary judgment, this Court must examine the evidence and all reasonable inferences from the evidence in a light most favorable to the nonmoving party. Stovall, 113 S.W.3d at 721. Our review of the trial court's ruling is de novo. Id.

### A. Facts

We begin by reviewing the facts as stated in the parties' summary judgment pleadings and attachments, construing the facts in the light most favorable to Jennifer Biscan, the nonmoving party.

The facts are as follows. According to Worley's motion for summary judgment, Worley hosted the party for his daughter Ashley's eighteenth birthday. The party was held at Worley's residence, a farm in Williamson County, Tennessee. Neither Worley nor Ashley sent written invitations; rather, Ashley personally invited members of her school class to the party. Other students heard about the party through word of mouth and came to the party, which was expected by Worley and Ashley. Jennifer was not personally invited to the party. However, she, like everyone who came to the Worley home on the night of the party, was welcomed and allowed to stay for the party.

Mr. Worley did not intend to serve any alcoholic beverages and did not. However, he expected that some of the minors attending the party would bring beer and drink it at the party. Mr. Worley told Ashley prior to the party that if any of the guests consumed alcoholic beverages, they

would not be permitted to leave the party and would be required to stay the night. He testified that this was his "rule." The deposition excerpt filed by plaintiffs in opposition to the motion for summary judgment included the following testimony by Worley:

> We decided to have a party and during – as we had talked about having a party, the topic of drinking came up. I was concerned that there would be people drinking. I knew from my past experience with my son and with – just my general knowledge of the kids' behavior that some drank and some didn't, and so I asked – I talked with Ashley about that, what to do, how to deal with that, and she said that, and I agreed, that really whatever my wishes might be were irrelevant, that the kids that chose to drink would find a way to do so. I was concerned about if there was drinking, you know, that there would be the drinking and driving issue. I was worried about that happening. And so based upon that conversation and based upon my past experiences with the teenagers, I decided that the best thing – the safest thing I could do would be to ask the kids to spend the night so that whether or not they drank they would not then go off driving. So Ashley was going to invite her close friends in the senior class, and she was told to tell them to come to the party, that there would be food and soft drinks and that in no event was anyone – that everyone was invited and encouraged to spend the night and in no event – if anybody drank, in no event were they to leave the property.
>
> . . . .
>
> That was my rule.

Worley expected Ashley to communicate the requirement that guests who drank would be required to spend the night, but Worley himself did not notify any of the guests of this requirement prior to the party. Some of the guests apparently knew or learned about the rule. For example, Dana Biscan testified in her deposition that she brought sleepwear and sleeping bags for herself and for Jennifer.

Once the party was underway, Worley became aware that some of the minors brought beer, as he had expected might happen. During the party some of the minor guests, including Brown, consumed alcohol. None of this alcohol was provided by Worley.

Worley also testified in his deposition that he was the only adult on the premises; that he was in control of the premises; and that he was in charge of supervising the party. He acknowledged that the guests' parents could reasonably expect that he would be supervising and chaperoning the party. He also acknowledged that it would have been his prerogative to have a rule that no beer would be permitted, but instead he chose to furnish a place where the minor guests who chose could consume alcohol.

Worley testified that he was "trying to be responsible for [the guests'] welfare by keeping them with me at home." When asked if he had assumed responsibility for making sure that if they drank beer they would be safe, Worley responded, "[y]es, I tried to do that." He also testified that it was his intent and that he undertook to "keep an eye on things and make sure nobody got hurt," and testified that if any of the guests became intoxicated, he intended to stop them from driving or leaving. In furtherance of that undertaking, he "just patrolled and walked around." Worley testified that he did not make a point of speaking to minors who were drinking to try to assess their condition and did not pick up anyone's keys to prevent them from driving until after he was informed of the accident.

Worley spent most of his time in the house, away from where most of the guests were, watching TV in a central living room. He testified that later he "camped out" in an easy chair in a back room. He dozed off approximately a half hour before he was awakened by sirens on the way to the accident, which occurred between 11:00 and 11:30 p.m., according to the record. After the accident, Worley testified that he required all of the guests to move their cars into a corral area to prevent anyone else from leaving.

Based on the foregoing facts developed in Worley's motion for summary judgment and Jennifer Biscan's response, and construed in a light most favorable to Jennifer, we must determine whether the defendant Worley had a duty to the plaintiff, Jennifer Biscan.

### B. Duty Generally

A negligence claim requires proof of the following familiar elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. Turner, 957 S.W.2d at 818. The existence of the first element, duty, is a question of law. Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998).

In general, all persons have a duty "to use reasonable care to refrain from conduct that will foreseeably cause injury to others." Turner, 957 S.W.2d at 818 (citing Doe v. Linder Constr. Co., 845 S.W.2d 173, 178 (Tenn. 1992)). We determine whether a duty existed in a particular case by evaluating the risk involved. "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

The general duty of care does not include an affirmative duty to act for the protection of another, however, "unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" Turner, 957 S.W.2d at 818 (citing Bradshaw, 854 S.W.2d at 871); see also Restatement (Second) of Torts § 315 (1965) (hereinafter "Restatement"). The special relationship doctrine carves out an exception to the general rule that there is no duty to act for the protection of a third party. Bradshaw, 854 S.W.2d at

-15-

871; see also Restatement § 315.  In other words, the doctrine recognizes that "'certain socially recognized relations exist which constitute the basis for such legal duty.'"  Bradshaw, 854 S.W.2d at 871 (quoting Fowler V. Harper & Posey M. Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 887 (1934)).[4]

We have recognized that because "the imposition of a legal duty reflects society's contemporary policies and social requirements," the concept of duty "'is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'"  Bradshaw, 854 S.W.2d at 870 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53 at 358 (5th ed. 1984)).  Thus, in determining whether a defendant has a relationship to the plaintiff such that she is entitled to protection, we will weigh public policy considerations, which "are crucial in determining whether a duty of care existed in a particular case."  Burroughs v. Magee, 118 S.W.3d 323, 329 (Tenn. 2003) (citing Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997), and Bradshaw, 854 S.W.2d at 870).

In deciding whether a duty was owed to act for the protection of a third party, we will also consider whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable.  Burroughs, 118 S.W.3d at 329.  In Bradshaw, for example, we concluded that a physician owes a duty to the immediate family members of a patient to warn them of possible exposure to the source of the patient's illness, even in the absence of a physician-patient relationship with the immediate members of the family.  854 S.W.2d at 872.  Our holding rested on the fact that it was highly foreseeable that the patient's wife would also contract the disease which killed the patient.  Id.  Similarly, in Burroughs, we held that a physician owed a duty to a third party as a member of the "motoring public" to warn his patient that medication could impair the patient's driving ability because the patient's medical history and the effects of medication made the third party's injury foreseeable.  118 S.W.3d at 332.  In Estate of Amos v. Vanderbilt Univ., 62 S.W.3d 133, 138 (Tenn. 2001), this Court held that the defendant hospital owed a duty to the patient's husband and to the general public to inform the patient that she had HIV because it was foreseeable that identifiable third parties would be at risk for exposure.  In contrast, in Pittman v. Upjohn Co., 890 S.W.2d 425, 433 (Tenn. 1994), we held that the defendant doctor, pharmacy, and pharmaceutical company had no duty to a third party plaintiff to warn of the risk to others from the patient's medication because it was not foreseeable that the third party would mistake the medication for aspirin.

This emphasis on foreseeability in third-party cases dovetails with the balancing test we generally apply in considering whether a defendant owed a duty of care to a particular plaintiff.  Specifically, we consider

---

[4] The Restatement envisions that such "socially recognized relations" may include parent and child, employer and employee, and innkeeper and guest.  See Restatement §§ 314-15.  This list, published forty years ago, is illustrative, not exclusive.

the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

McCall, 913 S.W.2d at 153; see also Burroughs, 118 S.W.3d at 329; Staples v. CBL & Assocs., Inc., 15 S.W.3d 83 (Tenn. 2000); Coln, 966 S.W.2d at 39; McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891 (Tenn. 1996).

The balancing test attempts to align the imposition of a duty with "society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." Bradshaw, 854 S.W.2d at 870 (citing William L. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15 (1953), and Kirk v. Reese Hosp. & Med. Ctr., 513 N.E.2d 387, 396-97 (Ill. 1987)). Although all the balancing considerations are important, the foreseeability prong is paramount because "[f]oreseeability is the test of negligence." Doe, 845 S.W.2d at 178. In sum, in cases such as this one where we must determine whether a defendant owed an affirmative duty to act for the protection of another, we will consider whether public policy and foreseeability favor recognizing a special relationship, and we will also consider whether the remaining factors in the balancing test favor imposition of a legal duty.

## C. Duty to Jennifer Biscan

Considering the foregoing principles, we turn to the question of whether the defendant Worley owed a duty to the plaintiff, Jennifer Biscan.

To determine whether Worley owed a duty to protect Jennifer from the harm caused by Brown, a third party, we must first inquire whether Worley stood in some special relationship to Jennifer or to Brown. The record reflects that Jennifer was not specifically invited to the party, but the Worleys permitted her and all of the other uninvited guests to stay at the party. Worley was aware that minors who were not specifically invited to the party might attend. Thus, whatever duty, if any, was owed to any of the minor guests was owed to all of them.

We begin by considering whether public policy favors a determination that the adult host Worley had a sufficient relationship to all of his minor guests, including Jennifer and Brown, such that he had a duty of care to each of them.

First, the legislature has made the public policy determination that minors are generally prohibited from consuming alcohol. See, e.g., Tenn. Code Ann. § 57-4-203(b) (2002) (making it illegal for minors to purchase alcohol and for any person to sell or furnish a minor with alcohol); Tenn. Code Ann. § 57-5-301(e)(1) (2002) (making it illegal for minors to possess beer "for any

-17-

purpose"). It is also the public policy of this state to prohibit persons under the influence of alcohol from driving. See, e.g., Tenn. Code Ann. §§ 55-10-401 to -416 (2002). In addition to these unambiguous legislative pronouncements, public policy considerations favor imposing a duty to act for the protection of minors where such a duty might be absent when dealing with adults. We have long recognized that, because of their immaturity and inexperience, a duty may exist towards minors where it might not exist towards adults. See Townsley v. Yellow Cab Co., 237 S.W. 58 (Tenn. 1922); see also Hawkins County v. Davis, 391 S.W.2d 658 (Tenn. 1965); Gritzner v. Michael R., 598 N.W.2d 282, 288 (Wis. Ct. App. 1999) ("it [is] self-evident that an adult who voluntarily takes on the supervision, custody or control, even on a temporary basis, of a visiting child . . . stands in a special relationship to such child . . ."). In sum, public policy considerations clearly favor finding that Worley had a special relationship to his minor guests such that he had a duty to ensure their safety, as well as to prevent them from driving while intoxicated.

Next we consider whether the foreseeability of Jennifer's injuries and the manner in which she suffered them supports finding a special relationship.

Worley himself recognized that it was entirely foreseeable that guests would become intoxicated and drive. As Worley stated in his deposition:

> I was concerned about if there was drinking, you know, that there would be the drinking and driving issue. I was worried about that happening. And so based upon that conversation and based upon my past experiences with the teenagers, I decided that the best thing – the safest thing I could do would be to ask the kids to spend the night so that whether or not they drank they would not then go off driving.

As it was foreseeable that guests would drink and drive, it was also entirely foreseeable that guests would ride with drivers who had been drinking. We conclude that the foreseeability factor also supports finding that Worley had a special relationship to his minor guests.

Worley points out that our appellate courts have required that, in order to find a special relationship as that term is defined by the Restatement, the defendant must have the "means and ability" to control the third party. See Lett v. Collis Foods, Inc., 60 S.W.3d 95, 100 (Tenn. Ct. App. 2001); see also Newton v. Tinsley, 970 S.W.2d 490, 493 (Tenn. Ct. App. 1997). Worley argues that he had neither the means nor the ability to control the guests. He argues that he had no actual knowledge that either Brown or Jennifer attended the party and that had he attempted to prevent Brown from leaving, he could have exposed himself to liability for false imprisonment, assault, or battery.

We agree that in the total absence of the means or ability to control his guests Worley would not have a special relationship to them. An adult host who is "in charge" of a party held for minors, however, certainly has some ability to control the conduct of his guests. Moreover, Worley's argument that he did not have the absolute right to control his guests misapprehends the standard of

care owed. Worley did not have an absolute duty to control his guests; rather, he had an absolute duty to use ordinary care to control his guests and ensure their safety. See Coln, 966 S.W.2d at 39 ("'Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending to the particular situation and is to be commensurate with the risk of injury.'" (quoting Doe, 845 S.W.2d at 178)); see also Frye v. Elkins, 122 S.W.2d 827, 829 (Tenn. Ct. App. 1938) ("'Ordinary care is relative, and not absolute, and, being relative, is dependent upon the circumstances of each particular case.'").

Worley testified that at previous parties held for his teenage son, he had monitored guests and had "corralled" all of the cars behind a fence to be able to control the departure of intoxicated guests. Indeed, after this accident happened Worley took a similar action, "corralling" all the minor guests' cars to ensure no one else would leave. In communicating his "rule" to his daughter, it was clearly his intention to prevent guests from leaving if they had been drinking. Worley's after-the-fact arguments as to why it might have been difficult to execute the duty are unavailing, particularly in light of the fact that he did not attempt to enforce the rule. Rather than continuing to patrol and monitor the guests, Worley fell asleep shortly before Brown and Jennifer left the party. In this case, the exercise of reasonable care might have included, in addition to the steps Worley took at previous parties, contacting the parents of intoxicated guests or even contacting the police. Reasonable care under the circumstances may not have included physically restraining his guests.

Having determined that Worley had a special relationship to Brown and Jennifer as minor guests, we examine the remaining factors in the balancing test to determine whether Worley owed them a duty of care. First, the possible magnitude of the potential harm or injury was great, as Worley recognized and as Jennifer's injuries demonstrate. The remaining factors balance the importance, social value, and usefulness of the activity against the feasibility, safety, usefulness, costs, and burdens of alternative conduct. Thus, we must balance the importance, social value, and usefulness of hosting a party with the intention of providing a "safe" place for teenagers to consume alcohol against the feasibility, safety, usefulness, costs and burdens of declining to host such a party.

Given that underage drinking is illegal, we have little difficulty in concluding that there is minimal social utility, if any, in providing a forum for teenagers to consume alcohol. Worley argues that "kids that chose to drink would find a way to do so," and that he should not be penalized for permitting them to do what they would inevitably do regardless of his wishes. We strongly disagree. Our view is that even if that conduct were inevitable, it must not be condoned or encouraged.

Worley argues that this Court should hold that liability will only be imposed on a social host who either serves or furnishes alcohol to minor guests or who exercises affirmative conduct and control over the consumption of alcohol by minors. Worley argues strenuously that it is bad policy to hold him liable for trying to "do the right thing," whereas if he had actually furnished alcohol to the minors, he would be shielded by Tennessee Code Annotated section 57-10-101.

We recognize, as did the Court of Appeals, the apparent tension between our holding that Worley owed a duty of care to protect his underage guests from harm and the legislative

determination that one who furnishes alcohol cannot, as a matter of law, be a proximate cause of injury to a third person resulting from the consumption of alcohol. The duty of care Worley owed to his guests, however, lies separate and apart from furnishing alcohol. Because he knowingly permitted and facilitated the consumption of alcohol by minors, an illegal act, Worley had a duty to exercise reasonable care to prevent his guests from harming third persons or from befalling harm themselves. Considering the facts in the light most favorable to the plaintiffs, we therefore affirm the trial court's denial of Worley's motion for summary judgment on this ground.

### D. Assumption of Duty

We turn next to the plaintiffs' argument that Worley assumed a duty of care to all of the minor guests who attended the party and that Worley breached that duty by failing to ensure that intoxicated guests did not leave the party. Worley argues that he did not assume such a duty, but that even if he did, he abandoned it. "One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." Stewart v. State, 33 S.W.3d 785, 793 (Tenn. 2000) (quotation and citation omitted). Whether or not a person has assumed a duty to act is a question of law. Id.

Worley stated that his "rule" would be that any minors who consumed alcohol would be required to spend the night, and that he intended to prevent minors from leaving the party if they had been drinking. He also admitted in his deposition, submitted by the plaintiffs in opposition to his motion for summary judgment, that he had assumed responsibility for making sure that if the guests drank beer they would be safe, and that he was "trying to be responsible for [the guests'] welfare by keeping them with me at home." He also testified that it was his intent and that he undertook to "keep an eye on things and make sure nobody got hurt."

Worley argues that he abandoned any duty he might have assumed by failing to enforce the rule, but his failure to enforce the rule is the very negligence of which the plaintiffs complain. Worley could have abandoned the duty by cancelling the party, but once the guests had been invited, had arrived, and had begun drinking, Worley was not in a position to abandon the duty he had undertaken to protect them. Indeed, Worley's own testimony reflects that he continued to execute his duty well after the party started; he stated in his deposition that he "patrolled and walked around" in an attempt to "keep an eye on things" during the party.

Worley argues that even if he assumed a duty to protect the guests who were invited to the party, he did not assume a duty as to either Jennifer or Brown, because Brown testified that they were unaware of the rule that guests who drank had to stay overnight. Worley argues that because there was no detrimental reliance on Worley's rule by either Jennifer or Brown, there can be no duty owed to them. However, Brown's testimony was contradicted by Ashley Worley's deposition testimony that she personally invited Brown and informed him of the rule, and by Dana Biscan's deposition testimony that both she and Jennifer intended to spend the night at the Worley farm. Considering these facts in the light most favorable to Jennifer, we must conclude that Brown and Jennifer were aware of the rule. Moreover, having undertaken a duty to protect his guests from the consequences

of drinking and driving, reliance of any of the guests on Worley's protection was not required. Worley is liable if either "(a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement § 324A (emphases added).

Considering the facts in the light most favorable to the plaintiffs, we hold that Worley did voluntarily assume a duty to the minors attending Ashley's party, including Jennifer and Brown, and we therefore affirm the trial court's decision to deny summary judgment on that basis as well.[5]

### Conclusion

Having reviewed the record and the applicable authority, we hold that the trial court did not err in excluding evidence of the minor plaintiff, Jennifer Biscan's prior alcohol-related offenses and her prior experiences with alcohol. We also hold that the trial court did not err in determining that the plaintiff's sister, Dana Biscan, was not at fault as a matter of law pursuant to Tennessee's statutory shield for furnishers of alcoholic beverages. Finally, we hold that the defendant, Paul Worley, had a common-law duty of care to Jennifer Biscan and that he also voluntarily assumed such a duty. We therefore affirm the result reached by the Court of Appeals on the separate grounds set out herein. Costs shall be taxed to the defendant-appellants and their sureties, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE

---

[5] Because we have determined that Worley owed a common-law duty to Jennifer Biscan and that he voluntarily assumed a duty to her, we decline, as did the Court of Appeals, to reach the plaintiffs' argument that Worley was also negligent per se.