IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 21, 2014 Session

## IN RE KENDAL A.

**Appeal from the Chancery Court for Obion County**
**No. 30601     W. Michael Maloan, Chancellor**

_____

**No. W2014-00638-COA-R3-PT - Filed November 17, 2014**

_____

The trial court terminated Mother's parental rights on the grounds of abandonment by an incarcerated parent and severe child abuse, and found that termination of Mother's rights was in the child's best interest.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**.

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J.,W.S. and RICHARD H. DINKINS, J. joined.

James T. Powell, Union City, Tennessee for the appellant, Kristy W.

Robert E. Cooper, Jr., Attorney General and Reporter; Ryan L. McGehee, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**MEMORANDUM OPINION[1]**

    The facts giving rise to this termination of parental rights action are largely

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

undisputed. Kendal A. is a non-marital child born in July 2012.[2]  Both Mother and Kendal tested positive for "benzos" when Kendal was born.  In August 2012, Mother was arrested for DUI and reckless endangerment while Kendal was a passenger in Mother's vehicle. She subsequently pled guilty to the DUI and was sentenced to 11 months and 29 days, to serve 30 days.  Mother's driver's license also was revoked.

In November 2012, the Department of Children's Services ("DCS") filed a petition for dependency and neglect in the Juvenile Court of Obion County against Mother, Kendal's father ("Father") and the father of Mother's older child K. W., who was born in October 2005.  Following appointment of attorneys to represent the parents and a guardian ad litem, the petition was heard in February 2013.  By order entered March 5, 2013, the juvenile court found that there was a danger of immediate harm to the children due to dependency and neglect, but that there was a less drastic alternative to removal at that time.  The juvenile court ordered Mother and Father to submit to alcohol and drug assessments and to follow all recommendations.  It also ordered Mother to submit to random drug screens due to her involvement in a methadone program.

In the meantime, DCS received a referral in January 2013 and visited Mother's home in February 2013.  Mother refused to submit to a drug screening.  When DCS visited again in March 2013, Mother tested positive for morphine and opiates.  She was arrested for possession of a schedule II drug while the DCS investigator was present in Mother's home and Kendal was placed in State custody.  On March 19, 2013, DCS filed a second petition for dependency and neglect and sought an award of temporary legal custody of K. W. to her father and of Kendal to DCS.  The trial court entered a protective custody order on March 19, 2013; K. W. was placed in the custody of her father, and Kendal was placed in DCS custody.  In April, Mother and Kendal tested positive for cocaine and benzoylecgonine. Mother and Father were arrested and charged with attempted aggravated child neglect for allowing Kendal to be exposed to cocaine.  Mother pled guilty and was incarcerated from April 16 through August 9, 2013.

In June 2013, Mother and Father stipulated in the Obion County Juvenile Court that Kendal was dependent and neglected, but denied allegations of severe child abuse.  In July 2013, while Mother and Father were incarcerated, DCS filed a petition in the Chancery Court of Obion County to terminate Mother's and Father's parental rights on the grounds of abandonment by an incarcerated parent and severe child abuse.  DCS further alleged that termination of parental rights was in Kendal's best interest.  In September 2013, Mother signed a treatment plan agreeing to complete a residential treatment program, to follow recommendations to address her substance abuse issues, to complete aftercare services, and to abstain from drug and alcohol use.  She entered a rehabilitation program in October 2013 and was successfully discharged in November 2013.  However, she failed to attend aftercare

---

[2]In cases involving minor children, it is this Court's policy to redact names to protect the children's identity.

rehabilitation or attend any AA or NA meetings. Following a hearing on October 21, 2013, the trial court terminated Father's parental rights on the grounds of severe child abuse and abandonment by an incarcerated parent.

The trial court heard the petition to terminate Mother's parental rights on March 5, 2014. Brittany Hudson ("Ms. Hudson"), the DCS case manager who signed DCS's petition to terminate parental rights, left DCS employment in December 2013 and did not testify at trial. DCS witnesses included Brenda Scott ("Ms. Scott"), the investigator who was present in Mother's home when she was arrested in March 2013; Jill Ferrie ("Ms. Ferrie"), a DCS investigator who began working with Mother in August 2012; and Jack Horton ("Mr. Horton"), the case manager who replaced Ms. Hudson. Additionally, Lisa Piercey, M.D. ("Dr. Piercey") testified by deposition that cocaine was found in a hair follicle drug screen from Kendal. Mother testified that she was not currently in a position to care for Kendal; that she was unemployed; and that she was living with Father, whose parental rights were terminated in November 2013.[3] She further testified that she had no transportation and that she had not begun aftercare rehabilitation programs or attended any AA/NA meetings.

The trial court found that clear and convincing evidence supported termination of Mother's parental rights on the grounds of abandonment by an incarcerated parent and severe child abuse. It also found that termination of Mother's parental rights was in Kendal's best interest. The trial court entered final judgment in the matter on March 17, 2014, and Mother filed a timely notice of appeal to this Court.

## Issues Presented

Mother presents the following issues for our review, as stated by Mother in her brief:
1) Did the trial court err in allowing evidence to be entered over the objection of counsel for the petitioner?
2) Did the trial court err in allowing the proceedings to go forward even though the petitioner was not present for the State?

## Standard of Review

Appellate review of the findings of facts of a trial court sitting without a jury is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In Re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010) (citation omitted). Insofar as a factual finding is based upon the trial court's assessment of witness credibility, we will not reverse that finding absent clear and convincing evidence to the contrary. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). No presumption of correctness attaches, however, to a trial court's conclusions of law. Tenn. R. App. P.

---

[3]Father did not appeal termination of his parental rights.

-3-

13(d); *Shore v. Maple Lane Farms*, LLC, 411 S.W.3d 405, 414 (Tenn. 2013). Whether the facts of the case support a statutory ground for termination of parental rights is a question of law that we review *de novo* with no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citation omitted).

Tennessee Code Annotated § 36–1–113 governs the termination of parental rights. The Code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36–1–113(c)(2010). Accordingly, the trial court must determine whether clear and convincing evidence supports a finding that 1) the parent's actions constitute a statutory ground for termination and 2) termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36–1–113(c)(2010). Upon review, we must distinguish between the trial court's specific findings of fact and "the combined weight of these facts." *In re M.J.B.*, 140 S.W.3d 643, 654 n. 35 (Tenn. Ct. App. 2004) (citing *In re Valentine*, 79 S.W.3d 539, 548-49 (Tenn. 2002)). Although we presume the trial court's specific findings of fact to be correct if supported by a preponderance of the evidence, we "must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion." *In re Michael C. M.*, No. W2010–01511–COA–R3–PT, 2010 WL 4366070, at *2 (Tenn. Ct. App. Nov.5, 2010).

**Discussion**

The trial court terminated Mother's parental rights on the grounds of abandonment by an incarcerated parent as provided by Tennessee Code Annotated § 36-1-113(g)(1) and severe child abuse as provided by Tennessee Code Annotated § 36-1-113(g)(4). The Code defines abandonment, in relevant part, to mean that:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

-4-

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2014). Section 37-1-102(b)(21) (2014) defines severe child abuse as:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
> (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).
>
> (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;
>
> (C) The commission of any act towards the child prohibited by §§ 39-13-502 -- 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or
>
> (D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring[.]

It is undisputed that Mother was incarcerated when DCS filed its petition to terminate her parental rights in July 2013. The trial court found that Mother abandoned Kendal for purposes of the section where Mother had engaged in conduct prior to her incarceration that exhibited a wanton disregard for Kendal's welfare. The trial court found that Mother used illegal drugs before and after Kendal's birth, that Kendal was born with cocaine in her system, and that drug screens revealed that Kendal was exposed to cocaine. It also is undisputed that Mother operated her vehicle while intoxicated and/or under the influence of illegal substances while Kendal was in the vehicle; that Father's parental rights were terminated on the grounds of abandonment by an incarcerated parent and severe child abuse and that Father did not appeal termination; and that Mother is unemployed and living with Father.

We observe that Mother does not raise the trial court's factual findings or its conclusion that DCS carried its burden to demonstrate grounds by clear and convincing evidence as issues in her brief to this Court. Rather, she asserts 1) that the trial court erred

by permitting DCS to question Mother regarding whether she had been arrested for having methamphetamine in her purse where the relevant arrest warrant had been dismissed and 2) by permitting the case to be heard without Ms. Hudson's participation. Mother's argument, as we understand it, is that evidence of the allegedly dismissed arrest warrant was prejudicial and that she was denied her right to question Ms. Hudson, who signed the petition to terminate Mother's parental rights but did not testify at trial.

We turn first to Mother's assertion that the trial court erred by allowing DCS to question Mother with respect to whether she was arrested for having methamphetamine in her purse. Under Rule 402 of the Tennessee Rules of Evidences, relevant evidence is generally admissible, while irrelevant evidence is not. The Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence ." Tenn. R. Evid. 401. We review a trial court's evidentiary decisions under an abuse of discretion standard. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citation omitted). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001)(quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999)). This standard does not allow an appellate court to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998)). Rather, the abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and therefore "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn.2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn.2010)).

Upon review of the transcript of the March 2014 hearing of this matter, we observe that counsel for DCS asked Mother whether she recalled testing positive for methamphetamine and morphine, and stated, "That was also the day you were arrested for having methamphetamine in your purse." Mother stated, "Yes[,]" and counsel objected on the ground that the warrant stated that it was dismissed. The trial court noted that Mother would have an opportunity to cross-examine on the matter, and no further questioning ensued with respect to the arrest warrant.

Without holding that the trial court erred by admitting the March 2013 arrest warrant into evidence, to the extent that the trial court arguably so erred the error was harmless in light of the undisputed facts of this case and the totality of the evidence. Mother testified that she was arrested in April 2013 and charged with attempted aggravated child neglect, and that she pled guilty to that offense. Dr. Piercey testified by deposition that she examined Kendal on May 20, 2013; that a hair follicle drug screen of Kendal in April 2013 was positive for cocaine and benzoylecgonine; that exposure to cocaine by an infant carries serious short-term, medium-term and long-term health risks, including stunted organ growth and death;

and that the fact that Kendal was not currently displaying any symptoms did not negate the dangers of being exposed to cocaine as an infant. Dr. Piercey testified:

> My assessment for this child based on my medical opinion was severe physical abuse secondary to drug exposure and drug endangerment. I further opined that the direct exposure to the use of cocaine may cause long term impairment of neurological, behavioral, respiratory and/or other organ development. My opinion was that of severe physical abuse. From a medical standpoint, that means life threatening or potentially life altering.

We discern no reversible error on the part of the trial court.

We next turn to Mother's assertion that the trial court erred by allowing the matter to go forward without the participation of Ms. Hudson, who signed the July 2013 petition to terminate Mother's parental rights. In her brief, Mother asserts that Ms. Hudson was the "petitioner" in this matter and that Mother was denied her right to cross-examine Ms. Hudson where Ms. Hudson did not testify at trial. Mother further asserts that Mr. Horton had no personal knowledge of the events leading to DCS's petition to terminate Mother's rights, and that he therefore was not a proper witness.

Contrary to Mother's assertion, DCS is the petitioner in this matter. Ms. Hudson is not. Although Ms. Hudson signed DCS's petition to terminate Mother's parental rights, she did so not in her personal capacity but as a representative of DCS. We additionally note that, contrary to Mother's assertion in her brief, Mother was not deprived of her right to cross-examine a witness against her where Ms. Hudson did not testify in this matter. The allegations contained in DCS's petition do not constitute evidence or testimony, and DCS had the burden of proof to demonstrate grounds for termination. To the extent that Mother asserts that Ms. Hudson was an indispensable witness in this case, we observe that Mother did not seek to subpoena Ms. Hudson. Additionally, regardless of Mr. Horton's personal knowledge of the events giving rise to this action, or lack thereof, Ms. Scott and Ms. Ferrie also testified at the hearing of this matter, and Dr. Piercey testified by deposition. The combined testimony of the witnesses was sufficient to demonstrate grounds for termination notwithstanding the absence of Ms. Hudson. This issue is without merit. Upon review of the record transmitted to this Court, moreover, we affirm the trial court's determination that termination of Mother's parental rights is in Kendal's best interests.

## Holding

In light of the foregoing, we affirm the judgment of the trial court. Costs on appeal are taxed to Mother. Because Mother is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
ARNOLD B. GOLDIN, JUDGE