**Dan BOSTAPH and wife, Karen Bostaph, Plaintiffs–Appellants,**

v.

**Jerry LAWS and Jim Laws, d/b/a Laws' Termite Control, Defendants–Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 22, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 19, 1992.

Pat Nichol, Antioch, for plaintiffs-appellants.

Robert L. Estes, Peter F. Klett, Stewart, Estes & Donnell, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiffs from the trial court's directing a verdict for defendant at the close of plaintiffs' proof and entering a judgment dismissing plaintiffs' complaint as to all defendants.

## THE FACTS

On 5 November 1989, plaintiffs executed a contract to purchase a home located at 806 Kirkwood Drive, Murfreesboro, Rutherford County, Tennessee. The sale was to close on 21 November 1989, but the plaintiffs were unable to secure financing and the closing was postponed until 19 December 1989. In the interim, plaintiffs rented the home from the owners and moved in a few days after Thanksgiving 1989.

Upon moving into the Kirkwood Drive residence, plaintiffs noticed damage to a hardwood floor board in the front room of the house. Mr. Bostaph testified that the board "gave under your foot ..., and it looked like it was rotting."

The record is clear that the Kirkwood Drive home had been infested with termites at some time in the past and had been treated for termite infestation as late as 20 October 1980.

The previous owners of the Kirkwood Drive residence had entered into a contract with Al Pest Control of Murfreesboro. As a result of that contract, a termite inspection and treatment of the Kirkwood Drive residence was done on 20 October 1980. Thereafter, Al Pest Control inspected the home on an annual basis through October 1988. The records maintained by Al Pest Control show that as of 14 October 1988 there was no visible evidence of live infestation of termites. The records did not reflect anything concerning the amount of damage that was done as a result of the prior infestation.

The real estate contract provided as follows:

Property is to be inspected by a licensed and bonded pest control company, at SELLER'S expense, and any infestation of termites or other wood destroying insects, or structural damage caused by such infestation, or by wet rot or dry rot, or by fungus shall be corrected at SELLER'S expense. A current certifying letter shall be furnished to BUYER at closing. Neither SELLER nor agent(s) will be held responsible after closing.

Plaintiffs arrived at the scheduled closing on 19 December 1989 and were presented with a "Wood Destroying Insect Information" form which had been signed by defendant, Jerry Laws, dated 17 November 1989. Plaintiffs had serious doubts at that time that the defendant had inspected the home prior to presenting them with the information sheet and therefore desired to have the home reinspected for termites prior to closing. The closing was postponed until later in the afternoon of 19 December 1989 so there could be a re-inspection.

Defendant, Jim Laws, was contacted and he inspected the home on 19 December 1989. Plaintiffs accompanied Jim Laws during his inspection, and the parties agreed that there was no visible evidence that there were any termites on 19 December 1989. The evidence is that defendant, Jim Laws, conducted a standard inspection of the home, including an inspection of the interior of the home and the exterior of the home and the readily accessible crawl space under the home. As a result of the inspection, defendants issued a second "Wood Destroying Insect Information" form, dated 19 December 1989 which was given to the plaintiffs prior to closing.

The 19 December 1989 termite letter stated that visible evidence of wood destroying insects was observed and that no control measures were performed. The letter also stated that the "house has had termites at one time, find damage in sub floor and hardwood floor near front door, also have been in wall around front door." The letter also stated that visible evidence of previously treated infestation, which is now inactive, was observed. The letter further stated that no visible evidence of infestation from wood destroying insects was observed, "active."

The inspection only covered the accessible areas of the property, including attics and crawl space which permitted entry and did not include areas that were obstructed or inaccessible at the time of the inspection. The letter further stated: "This is not a structural damage report. Neither is this a warranty as to absence of wood destroying insects."

After receiving the 19 December 1989 termite letter, the plaintiffs renegotiated the terms of the contract, and plaintiffs were given a credit of $125.00 for the old damage in the floor of the living room near the front door and for the damage, if any, around the front door. The parties then completed the closing in the late afternoon of 19 December 1989.

On 30 March 1990, plaintiffs were in the process of remodeling and had hired a general contractor, Lin Melancon. Mr. Melancon tore down the drywall near the front door, removed the insulation, and observed active termite infestation present in the wall. Mr. Melancon testified that he saw no evidence of termites before he pulled down the drywall.

The evidence is that there was no visible evidence of any termites present in the home from 19 December 1989, the date of closing, until 30 March 1990, when Mr. Melancon tore down the drywall near front door and removed the insulation.

Upon finding the live termites, plaintiffs contacted Mr. Gary Higby. Mr. Higby, who had been employed in the termite industry since 1978, conducted a standard termite examination of the home and confirmed that as of 30 March 1990 there was an infestation of termites present. Mr. Higby could not testify that there was visible evidence of termites present on 19 December 1989, when Mr. Laws conducted his inspection. Mr. Higby further testified that Mr. Laws could have properly inspected the house in December 1989 and not have seen any evidence of termites, but that several months later there could be visible evidence of termites. He testified that termites typically swarm in the spring

and once termites have set up a colony underground they continuously reproduce and can multiply rapidly. Mr. Higby testified that you can check a house today and not see anything, then go back two months later and find live termites. Mr. Higby also testified that an inspector cannot look inside the walls when he is conducting a standard inspection and that there could be termites in a wall and the inspector would not see the infestation unless there was visible damage.

After inspecting the home on 30 March 1990, Mr. Higby found evidence of infestation in three areas. There were live termites present behind the drywall that was torn down by Mr. Melancon. Mr. Higby testified that this infestation could not have been visibly observed without removing the drywall and that it was not standard or required procedure to tear out the wall during a termite inspection. Mr. Higby also found live termites present in the bathroom under the tub. He acknowledged, however, he had no idea how long the termites were present and could not testify that they were present in December 1989 at the time of the defendants' inspection. Mr. Higby also found termites present in the crawl space under the home. However, he testified that the damage was not extensive and he could not determine how long the termites had been present in that area. He, likewise, could not testify that the termites were present on the date of the defendants' inspection.

Mr. Higby acknowledged that, given the propensity of termites to multiply very rapidly and swarm in the spring, the defendant Jim Laws could have performed a completely proper inspection in December 1989 and not observed any of the damage that Mr. Higby found some three months later.

We find no evidence in the record, nor are we cited to any, that Mr. Laws negligently inspected the home on 19 December 1989, or that his inspection was below the standard of care in the industry, or, in fact, that he did anything wrong. The record is devoid of any evidence of negligent conduct on the part of defendant.

The plaintiffs' sole issue is: "Whether the trial judge was correct in directing a verdict in favor of the defendants in the above negligence case after all the proof had been submitted by the plaintiff."

[A] motion for a directed verdict requires the trial Judge and reviewing Court on appeal to look to all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied and the case submitted to the jury.

*Country Maid Dairy, Inc. v. Hunter*, 57 Tenn.App. 138, 149, 416 S.W.2d 367, 372 (1967).

The burden is upon the plaintiffs to show by competent evidence that the defendants were negligent in the inspection on 19 December 1989 and/or that defendants deviated from the accepted standard of care for termite inspectors in making the 19 December 1989 inspection. Plaintiffs failed to carry their burden in the trial court.

The judgment of the trial court is affirmed with cost assessed to plaintiffs and the case remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.