# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS
### February 24, 2015 Session

## WILLIAM TIMOTHY HAYES, ET AL. V. COOPERTOWN'S MASTERSWEEP, INC.

**Appeal from the Circuit Court for Shelby County**
**No. CT00023608      Karen R. Williams, Judge**

_____

**No. W2014-00783-COA-R3-CV – Filed April 17, 2015**

_____

This is an appeal from the grant of two motions for directed verdict. Appellants contracted with Appellee chimneysweep company to redesign and reconstruct portions of their fireplace and chimney to address a problem with smoke escaping into the den, upper floors, and attic. More than a year after the construction was completed, Appellants' home was damaged by a fire, which started when wood flooring joists in close proximity to the firebox ignited. Appellants brought claims for negligence and breach of contract against Appellee. The case was tried before a jury. At the close of Appellants' proof, the trial court granted the Appellee's motions for directed verdict on the ground that the Appellants had failed to establish that the Appellee owed them a duty of care to conduct a destructive investigation of the safety of the Appellants' fireplace and also on the ground that the suit was barred by the applicable statute of repose. We affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Russell E. Reviere, Jonathan D. Stewart, and Brandon W. Reedy, Jackson, Tennessee, for the appellants, William Timothy Hayes and Stephanie Hayes.

Leland M. McNabb, Pam Warnock Blair, and Andrew J. Droke, Memphis, Tennessee, for the appellee, Coopertown's Mastersweep, Inc.

# OPINION

## I. Background

On November 17, 2000, William and Stephanie Hayes (together, "the Hayeses," or "Appellants") purchased a house, which was constructed in 1964. Before the Hayeses moved into their home, they contracted with a third party, who is not a party to this appeal, to have the kitchen and the den fireplace remodeled. The fireplace was originally all-brick construction, but the Appellants replaced some sections of the hearth with granite, and lowered the location of the firebox by roughly two feet, flush with the floor of the sunken den. The sunken den is slab construction, but the rest of the first floor is conventional foundation construction. The back of the fireplace originally served as part of the kitchen wall; however, as part of the remodeling, Appellants had the fireplace brick covered in the kitchen and painted the inside of the new, lowered firebox, which obscured the fact that the lowered firebox was new construction.

The remodeled fireplace did not function properly. Whenever the Hayes built a fire, they noticed that smoke escaped into the den and that the upper floors and attic smelled like smoke. Eventually, Mr. Hayes contacted Coopertown's Mastersweep, Inc. ("Mastersweep" or "Appellee") and requested an inspection of the fireplace to determine the cause of the smoke problem. On December 18, 2002, Mastersweep's president, Charles "Ken" Robinson, inspected the Hayeses' chimney and fireplace. The Appellants did not inform Mr. Robinson that the firebox had been lowered as part of the recent remodeling work. Mr. Robinson's inspection included: (1) a visual inspection of the chimney sections located in the house's attic and above the roof; (2) a visual inspection beneath the fireplace in the house's crawlspace; and (3) a visual inspection of the inside of the fireplace and the chimney. Mr. Robinson used a camera to inspect the chimney flue, and he also drilled into the fireplace to ascertain whether there was any combustible material in contact with the fireplace. Parts of this inspection, including the inspection beneath the fireplace and the drilling, went beyond the inspection that the Hayeses contracted for. There were areas underneath the fireplace that could not be seen or inspected by Mr. Robinson. Based upon his inspection, Mr. Robinson concluded that the dimensions of the fireplace and the chimney were not conducive to proper smoke flow. Mr. Robinson also determined that the inside of the fireplace was incorrectly shaped, causing improper smoke ventilation and resulting in smoke from the fireplace escaping into the den. He also discovered that the clay tiles lining the chimney flue were cracked, which allowed smoke to escape into the upper floors and attic of the house.

In a letter to Mr. Hayes dated December 23, 2002, Mr. Robinson proposed a redesign of the fireplace to correct the smoking problems. Mr. Robinson's letter contained six specific recommendations:

1. Tear out [a] portion of the existing firebox and the damper to gain

access to the smoke chamber.

2. Climb up into the smoke chamber and repair all of the cracked and damaged mortar that has been thermal shocked by completely parging the smoke chamber with fire clay mortar.
3. Remove the loose and/or cracked flue liners as necessary to prepare for the liner installation.
4. Install a 304 grade, heavy walled, flexible, stainless steel liner from the top of the chimney to the top of the smoke chamber. This will require removal of the clay pot and I would suggest it be left off of the chimney.
5. Insulate the liner with a…"cast-in-place" chimney insulation.
6. Rebuild the firebox as necessary and reinstalled [sic] the damper.

The letter listed the materials required to implement these recommendations as "304 grade, heavy walled, flexible stainless steel liner, 'cast-in-place' insulation, firebrick, mortar, fireclay, high temperature caulk, etc." Sometime in 2003, the Appellants accepted Mastersweep's proposal. Thereafter, Mastersweep replaced the square flue from the original fireplace with a round flue, using a heavy-duty, flexible, stainless steel pipe. In order to facilitate the installation of the new chimney flue, Mastersweep removed bricks from the inside of the chimney and then filled the space between the chimney walls and the new flue with a type of "insulating mud." During his testimony, Mr. Robinson characterized the work as a "permanent addition" that would require "destructive methods" to remove. It is undisputed that Mastersweep substantially completed this work on October 8, 2003.

On January 17, 2005, the Appellants' house was severely damaged by fire. The fire began when wooden floor joists that had been in contact with the firebox ignited from exposure to heat generated by the fireplace. Although no one was injured as a result of the fire, the Hayeses were forced to move out of their house for fifteen months while repairs were made.

On February 15, 2008, the Hayeses brought suit against Mastersweep, alleging negligence and breach of contract. This case was ultimately tried before a jury on March 25-26, 2014. On March 27, 2014, the Appellee filed two separate motions for directed verdict, arguing that the Appellants had failed to prove that Mastersweep owed the Hayeses a duty of care to conduct a destructive inspection of the fireplace and that the statute of repose, codified at Tennessee Code Annotated Section 28-3-202, barred the Appellants' lawsuit. In an order dated April 9, 2014, the trial court granted both motions for directed verdict, holding that the Appellee did not owe such a duty of care to the Appellants and that the applicable statute of repose barred the Appellants' lawsuit. On April 9, 2014, Appellee filed a motion for discretionary costs. On April 25, 2014, the Appellants appealed the trial court's decision on the directed verdict motions. On May 27, 2014, the trial court granted Appellee's motion for discretionary costs, awarding

3

$5,820.50 in discretionary costs.

## II. Issues

We restate the dispositive issues as follows:

1.  Whether the trial court erred by concluding that the Appellants' claims against the Appellee were time-barred by the four-year statute of repose codified at Tennessee Code Annotated Section 28-3-202.

2.  Whether the trial court erred by concluding that the Appellee did not assume a duty of care toward the Appellants once it exceeded its contracted-for inspection.

3.  Whether the trial court erred in awarding discretionary costs to the Appellee.

## III. Standard of Review

This case requires us to review the trial court's grant of a motion for directed verdict pursuant to Tennessee Rule of Civil Procedure 50.01.[1]  "The grant or denial of a motion for directed verdict is a question of law; therefore, the court's decision is subject to a de novo review with no presumption of correctness." *Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 271 (Tenn. Ct. App. 2013).  We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## IV. Analysis

## A. Statute of Repose

We begin our analysis by reviewing the trial court's grant of Mastersweep's motion for directed verdict on the statute of repose ground.  The applicable statute of repose provides as follows:

---

[1] Tennessee Rule of Civil Procedure 50.01 provides that:

A motion for a directed verdict may be made at the close of the evidence offered by an opposing party or at the close of the case. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.  The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Tennessee Code Annotated Section 28-3-202.

Appellants argue that their claim and damages result from Appellee's failure to conduct a proper inspection of their fireplace structure, as opposed to negligent construction of an improvement to the fireplace structure. Appellants further argue that the work performed by Appellee was repair work and not an improvement to real property. Consequently, Appellants contend, the statute of repose does not apply in this case. Appellee, on the other hand, argues that Appellants' claims arise from injury to real property from deficient design and construction of an improvement to real property, and, therefore, Appellant's lawsuit is subject to the time limit prescribed by the statute of repose.

We note that statutes of limitations and statutes of repose do not function in the same way. "A statute of limitations normally governs the time within which legal proceedings must be commenced after a cause of action accrues. A statute of repose…limits the time within which an action may be brought and is unrelated to the accrual of any cause of action." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005). Although the Appellants couch their complaint as a claim for negligence based upon Mr. Robinson's inspection of their fireplace, that characterization does not render their action beyond the application of the statute of repose. "[T]he designation given to a cause of action does not necessarily or conclusively determine whether Tenn. Code Ann. § 28-3-202 applies. Rather, we must look to the substantive allegations of the complaint." *Chrisman v. Hill Home Development Inc.*, 978 S.W.2d 535, 540 (Tenn. 1998); *see also* *Henry v. Cherokee Const. and Supply Co., Inc.*, 301 S.W.3d 263, 266 (Tenn. Ct. App. 2009). The Appellants' complaint contains specific allegations that Mastersweep committed negligence by "failing to properly repair the fireplace and/or chimney of [the Appellants'] home in a reasonable and workmanlike manner so as to prevent excess heat from transferring to the wood flooring structure." The complaint also alleges that Mastersweep breached a contract between the parties by failing to "adequately rebuild the existing firebox such that the existing wood floor structure beneath it would not catch fire."

Although the complaint alleges that Mr. Robinson was negligent in his inspection of the fireplace, from the entirety of the complaint, and considering the damages sought,

we conclude that the Hayeses' causes of action, including the claim for negligent inspection, arise from deficiencies "in the design, planning…or construction of an improvement to real property," and, therefore, is subject to the time limitations of Section 28-3-202. Tennessee Code Annotated Section 28-3-202 bars *any* cause of action that arises out of a deficiency in the design or construction of an improvement to real property, including claims of negligence, nuisance, strict liability and negligent misrepresentation. *See, e.g., Chrisman*, 978 S.W.2d at 540 (holding that Tennessee Code Annotated Section 28-3-202 bars not just negligence claims, but a nuisance claim arising from deficient construction); *Henry*, 301 S.W.3d at 266-76 (holding that an action couched as a negligent misrepresentation was in fact an action arising from construction of an improvement to real property and therefore barred by the statute of repose); *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685-86 (Tenn. Ct. App. 1986) (holding that Tennessee Code Annotated Section 28-3-202 barred a claim for fraud). Therefore, if a court determines that a cause of action is for injury to real property arising from a deficiency in the construction or design of an improvement to real property, it is subject to the time limit prescribed in Tennessee Code Annotated Section 28-3-202. Because we conclude that Appellants' claims, including the negligent inspection claim, are for injury to real property arising from deficient design and construction, these claims will be barred by Tennessee Code Annotated Section 28-3-202 if their lawsuit was not brought within the time limit prescribed.

Appellants have also argued that Appellee's work constituted mere repair work, and, therefore, does not fall into the category of an improvement to real property required by the statute of repose. Tennessee Code Annotated Section 28-3-202 does not provide a definition for an "improvement to real property"; however, this Court has previously defined several tests to determine whether construction constitutes an improvement to real property. One such test is that an improvement to real property may be

> a "valuable addition" to property *or* an amelioration in a property's condition, an amelioration which amounts to more than a repair or replacement, which costs labor or capital, and which is meant to increase the property's value, beauty, or utility, or which is meant to adapt the property for a new purpose.

*Cartwright v. Presley*, No. E2005-02418-COA-R3-CV, 2007 WL 161042, at *5 (Tenn. Ct. App. Jan. 23, 2007) (emphasis in original) (citing *Watkins v. Tankersley Const., Inc.*, No. W2004-00869-COA-R3-CV, 2005 WL 1541869, at *5 (Tenn. Ct. App. June 29, 2005)). The construction at issue in this case must satisfy the definition of either a valuable addition or an amelioration to constitute an improvement to real property for purposes of Tennessee Code Annotated Section 28-3-202. *See id.*

In *Cartwright*, this Court concluded that the installation of a walk-in cooler in a floral store constituted an improvement to real property. *Id.* at *5. The *Cartwright* court

6

concluded that the walk-in cooler had been added to the shop and was valuable in that it furthered the business of the floral store, and, therefore, constituted an improvement to real property. *Id.* The *Cartwright* court also concluded that the walk-in cooler constituted an amelioration because it enhanced the property's utility as a floral business, cost labor and capital, and made the property "better." *Id.* In *Watkins*, this Court concluded that the "removal of trees, grading, and fill work…constituted an improvement to real property." *Watkins*, 2005 WL 1541869, at *5. The *Watkins* court concluded that, because this work enhanced the utility of the land in question by preparing it for home construction, the work constituted an improvement to real property. *Id.*

Testimony at trial revealed that Mastersweep completed all of the work that Mr. Robinson proposed in his December 23, 2002 letter. As set out above, Mr. Robinson's proposal included, *inter alia*, tearing out and rebuilding the firebox, replacing the damper, parging the smoke chamber with fireclay, and installing and insulating a new flue liner. Mr. Hayes testified that he paid $3,300 for the labor and materials required to implement these proposals, which clearly satisfies the labor and capital requirement of the definition of amelioration. This work also enhanced the utility of the home by enabling the Hayes family to use their fireplace without smoke escaping into several different parts of the house. We conclude, therefore, that the work performed by Mastersweep satisfies the requirements of an amelioration and, therefore, constitutes an improvement to real property and not merely repair work as asserted by Appellants.

Accordingly, the statute of repose applies and bars all such actions commenced outside the four-year limit. *See Chrisman*, 978 S.W.2d at 540. Because Appellants' complaint is for a claim arising from Mastersweep's redesign and construction of the Appellants' fireplace, their lawsuit must have been filed within four years of substantial completion of the work to survive the statute of repose. It is undisputed that Mastersweep substantially completed its work on the Hayeses' house on October 8, 2003. The instant suit was filed on January 16, 2008, more than four years after Mastersweep substantially completed its construction. As such, the trial court did not err in granting a directed verdict on this issue.

## B. Duty of Care

Although we hold that all of the Appellants' claims, including their negligent inspection claim, are barred by the statute of repose, in the interest of full adjudication, we will also address Appellants' argument that the trial court erred when it granted the Appellee's motion for directed verdict on the ground that Appellee did not owe a duty of care to the Hayeses. Appellants argue that Mr. Robinson assumed a duty of care when he examined the fireplace from the house's crawlspace because that action constituted an affirmative act that created a duty. The Appellee argues that there was nothing in the scope of Mr. Robinson's inspection that would have revealed the hidden flaw that eventually led to the fire in the Hayeses' home.

7

As found by the trial court, the Appellee was hired to address the problem of smoke escaping from the fireplace, and the inspection Mr. Robinson needed to perform to assess this problem did not require destruction of the fireplace structure, which would have been necessary to expose the defect that ultimately caused the fire. The trial court stated in its ruling that the Appellee's inspection did not suggest the existence of a hidden defect. The trial court also found that the "testimony…does not reflect that the [Appellants] discussed with the [Appellee] the prior renovation." Based on those facts, the trial court concluded that Mr. Robinson's investigation did not create a duty on Appellee's part to conduct a destructive inspection of the fireplace.

"Whether or not a person has assumed a duty to act is a question of law." *Biscan v. Brown*, 160 S.W.3d 462, 483 (Tenn. 2005) (citing *Stewart v. State*, 33 S.W.3d 785, 793 (Tenn. 2000)). "Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). "[P]ersons do not ordinarily have a duty to act to protect others from dangers or risks except for those that they themselves have created." *Satterfield*, 266 S.W.3d at 357. However, "'[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.'" *Biscan*, 160 S.W.3d at 482-83 (quoting *Stewart*, 33 S.W.3d at 793)). In other words, "it is clear that one who assumes to act assumes a duty to act with reasonable care." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 604 (Tenn. Ct. App. 2001).

"In order to determine whether a duty is owed in a particular circumstance, courts must first establish that the risk is foreseeable, and, if so, must then apply a balancing test based upon principles of fairness to identify whether the risk was unreasonable." *Giggers*, 277 S.W.3d at 365. "An unreasonable risk of harm arises and creates a legal duty if the foreseeability and gravity of harm caused by the defendant's conduct outweighs the burdens placed on a defendant to engage in other conduct that would prevent such harm." *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013). "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom the duty is owed is probable." *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992).

Appellants argue that it was foreseeable that the fireplace might have a hidden defect because Mr. Robinson could not view the entire underside of the fireplace from the crawlspace; therefore, Appellants contend, he could not be sure that there were no combustible materials in proximity to the fireplace. Appellants argue that, once Mr. Robinson ascertained the fact that he could not view the entirety of the underside of the fireplace, he became duty-bound to perform a destructive investigation to ensure that no combustible materials were in proximity to the firebox.

We have previously held that a fireplace inspector does not assume a duty of care when the inspection itself is reasonably performed and does not suggest a potential

hazard. In *Neeley v. Piedmont Natural Gas Co., Inc.*, this Court upheld a summary judgment dismissing a negligent inspection claim arising from a fire caused by a hidden defect in a fireplace. *Neeley v. Piedmont Natural Gas Co., Inc.*, No. M2005-02446-COA-R3-CV, 2007 WL 496356, at *4 (Tenn. Ct. App. Feb. 15, 2007). In *Neeley*, a gas company employee inspected a fireplace on a rental property before turning the gas on for the unit. *Id.* at *1. The brick of the fireplace in *Neeley* had degraded, which allowed heat to escape, igniting the drywall and resulting in the fire. *Id.* The evidence in *Neeley* showed that the gas company inspector could have discovered the construction defect if he had removed the gas logs in the fireplace. *Id.* This Court reasoned that, because the inspection of the fireplace did not suggest any problems with the fireplace's construction, the inspector neither had nor assumed a duty of care when he did not "remove gas logs which had been in use for a number of years." *Id.* at *4.

The factual similarities between the instant case and the *Neeley* case guide our analysis of this issue. As in *Neeley*, here, Mr. Robinson's inspection did not lead him to believe there might be a hidden defect in the construction of the fireplace. He not only checked visible areas of the fireplace, including its underside, but also drilled into the firebox in order to ascertain whether combustible materials might be in proximity to the firebox. Mr. Robinson's testimony is uncontroverted on the point that there was nothing about his inspection that suggested combustible material might be in proximity to the firebox. The *Neeley* court also noted that the length of time the fireplace had been in use was a factor in determining whether a duty existed. Mr. Robinson knew the house was over thirty years old and that the fireplace had been in use during that time. Finally, while the inspector in *Neeley* would have had to simply remove gas logs, Mr. Robinson testified that he would have had to destroy part of the fireplace in order to discover the hidden defect.

From the totality of the circumstances, we conclude, as did the trial court, that the inspection was performed reasonably and that it did not suggest a hidden defect in the fireplace's construction. Accordingly, following the reasoning in *Neeley*, we conclude that Mastersweep neither owed nor assumed a duty of care.

### C. Discretionary Costs

In regard to the discretionary costs issue, Appellants argue that, if the trial court committed reversible error by granting the Appellee's motion for directed verdict, then the Appellee is not the prevailing party in the case, and, therefore, the trial court abused its discretion in awarding discretionary costs. In light of our holding affirming the trial court's ruling on the applicability of the statute of repose, this issue is pretermitted.

### V. Conclusion

For all of the foregoing reasons, we affirm the judgment of the trial court. The

case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, William Timothy Hayes and Stephanie Hayes, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE